UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>FRITZ KRAMER,<br>Defendant. | Case No. 16-cr-00322-EJD-1<br><br>**ORDER DENYING MOTIONS FOR A NEW TRIAL**<br><br>Re: Dkt. Nos. 388, 418 |

Before the Court are Defendant Fritz Kramer's two motions for a new trial. The first motion made on the ground of newly discovered evidence; the second motion is made on the ground that the jury was erroneously instructed on the "intent to defraud" element of wire and commodities fraud. Having considered the parties' briefs, the record in this case, and the applicable law, the Court DENIES both of Defendant's motions.

**I.   BACKGROUND**

Defendant Fritz Kramer was charged with 11 counts of wire fraud and one count of commodities fraud. Dkt. No. 119 (Superseding Indictment). The basis of the charges was a fraudulent investment scheme in which Defendant solicited from investors, purporting to invest those funds in a project known as "The Undertaking." *See id.* ¶¶ 11-20; *see, e.g.*, Dkt. No. 388 at 3. The Undertaking was presented to investors as a plan to export gold and diamonds from mines in the Democratic Republic of Congo ("DRC") to Europe, Asia, and the United States. *See* Superseding Indictment ¶¶ 12-13. According to the charges, however, Kramer knew the funds were not being used to develop an actual gold and diamond export project, and never intended to provide any return on the money he obtained from investors. *Id.* ¶ 19. After a 22-day jury trial in

Case No.: 16-cr-00322-EJD-1
ORDER DENYING MOTIONS FOR A NEW TRIAL
1

1  February and March 2019, Defendant was convicted on all 12 counts.  Dkt. Nos. 229 (minute

2  entry from first day of jury selection), 290 (minute entry from day of jury verdict); Dkt. No. 290

3  (verdict form).

4  On March 30, 2020, Defendant filed a motion for a new trial in pro per, claiming that he

5  had new evidence not considered at trial.  Dkt. No. 355 (original, unredacted version); *see also*

6  Dkt. No. 388 (public, redacted version) ("Mot. No. 1").  The Government opposed the motion on

7  April 13, 2020, Dkt. No. 363 ("Opp. No. 1"), and Defendant replied on May 22, 2020, Dkt. No.

8  398 ("Reply No. 1").  The Court then granted Defendant permission to file a second motion for a

9  new trial, this time based on an error in the jury instructions given by the Court at trial.  Dkt. No.

10  400 (order granting permission).  Defendant filed that motion in pro per on June 17, 2020, Dkt.

11  No. 418 ("Mot. No. 2"), and it has now been fully briefed, *see* Dkt. Nos. 420 ("Opp. No. 2"), 425

12  ("Reply No. 2").  The defense subsequently filed a supplemental brief in support of the second

13  motion, Dkt. No. 433 ("Def. Supp."), and the Government responded, Dkt. No. 434 ("Gov't

14  Supp.").  Both motions were heard on August 17, 2020, with Defendant Kramer arguing on his

15  own behalf for the first motion and his standby counsel arguing for the second motion.  Dkt. No.

16  436.

## II. DISCUSSION

Below, the Court addresses Defendant's motions for a new trial *seriatim*.

### A. New Evidence

Defendant's first motion for a new trial is based on purportedly newly discovered evidence.  Mot. No. 1 at 9-10.

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Relevant here, it is well-established that newly discovered evidence is a valid legal basis for a Rule 33 motion.  Specifically, the party seeking a new trial must "prove each of the following: (1) the evidence is newly discovered; (2) the defendant was diligent in seeking the evidence; (3) the evidence is material to the issues at trial; (4) the evidence is not (a) cumulative or

Case No.: 16-cr-00322-EJD-1
ORDER DENYING MOTIONS FOR A NEW TRIAL

2

(b) merely impeaching; and (5) the evidence indicates the defendant would probably be acquitted in a new trial." *United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009).

Here, Defendant's motion falters at the very first step: The evidence is not newly discovered. Defendant identifies the "new evidence" as a victim impact statement submitted by victim investor R.C. after the trial. The relevant sentences read:

> My investments totaling $248,023 were never beyond low five figures but it added up quickly, peaking in 2011-12, continuing until early 2015 on a very small basis to try to catch his partner in Kinshasa, who was the recipient of almost all the money. His partner, Jean Paul Mukende, got away because Florides tipped him off.

Dkt. No. 355-1 at 41 (cited by Mot. No. 1 at 10). According to Defendant, R.C. had previously been a "co-manager" of the project. Mot. No. 1 at 3 n.1, 8. In Defendant's view, her statement amounts to an admission that she had betrayed The Undertaking by attempting to get Jean Paul Mukuena[1] and Bernadette Npindu—two of Defendant's co-conspirators—arrested in 2015. *Id.* at 3. Defendant believes the statement thus substantiates his claim that she was not a true victim, but rather gave false evidence to the Government in order to "destroy" The Undertaking and Kramer himself. *Id.* at 8.

Evidence is not newly discovered if it "was known to, or was in the possession of, the defense" before the trial concluded. *Hinkson*, 585 F.3d at 1264. As the Government has shown, Defendant and his counsel not only knew of R.C.'s involvement in the 2015 attempted arrest, they introduced evidence and made arguments to that effect at trial.

To begin with, the Government points to several pieces of discovery that it produced to Defendant demonstrating his knowledge that R.C. took part in the attempted arrest. Opp. No. 1 at 12-14. One such document is an email sent by Defendant to victim investors C.S. and B.F. on April 24, 2015, after the arrest attempt had failed. Dkt. No. 364-3 (Bates No. 081942). In it, Defendant states:

> [R.C.] betrayed the secretary, jp, me, and all of kus—lied about

---

[1] The last name of Jean Paul is spelled differently in different documents in these proceedings. The Court will follow the parties and use "Mukuena," but notes that "Mukende," "Mukendi," and "Mukeune" have also been used. All of these iterations refer to the same individual.

Case No.: 16-cr-00322-EJD-1
ORDER DENYING MOTIONS FOR A NEW TRIAL
3

> sending 200k to kinshasa and set a trap for jp to get arrested when going there to pick up the money at 1 pm yesterday.

*Id.* Defendant does not deny that he wrote this email or that he received it in discovery. Defendant sent another similar email on April 25, 2015 to investors B.K., B.F., M.S., and C.S., as well as Mukuena and Npindu; this email was also apparently produced to Defendant in discovery in 2016. Dkt. No. 364-4 (Bates Nos. 064337-064338). This email has the subject line "Infamous& non-existing 200K and Unfortunate Betrayal to have [J.P.] arrested" and further details R.C.'s plan. *Id.* It states, among other things, that the "'courier' sent by [R.C.]" had "no money" and was instead a "set-up planned for JP's arrest." *Id.* Again, Defendant does not deny that he wrote this email or that he received it in discovery.

These emails show that Defendant already knew of R.C.'s role in the 2015 incident at the time it occurred and was again reminded of it through discovery in 2016.

Then, at trial, the defense repeatedly raised the issue to the jury. During his opening statement, defense counsel argued that R.C. had a "leadership" role in The Undertaking; he also specifically discussed the 2015 incident:

> Mr. Kramer's Central African undertaking was betrayed by one of its most enthusiastic supporters, [R.C.].
>
> It begins in early 2015. Mr. Kramer and Mr. Mukuena finally negotiated an agreement whereby, with the payment of $220,000, they would allow the shipment to fly, and [R.C.], who is in regular communication directly, personally, with Madam Secretary, Bernadette Npindu, announced to the community of investors and Mr. Kramer and Ms. Npindu that she had found the source for the $220,000 and that she would take care of it being paid in full within days.
>
> It appeared that after years of struggle and investment, there was a new break in the impasse that had stalled the shipment for over two years. In April [R.C.] announced that she would send a courier to the Democratic Republic of Congo carrying $220,000 in cash. She coordinated a delivery plan. The whole thing was a hoax, a setup. She was trying to get Bernadette Npindu and Jean Paul arrested. She had lost faith in the project. It was a trap and it failed.

Dkt. No. 364-8 at 18-19 (Tr. of 2/8/19 at 89-90). Defense counsel also told the jury that R.C. had reported Kramer to law enforcement:

> After the failure of the hoax with the courier, [R.C.] continued her attack on Mr. Kramer's undertaking. She reported Mr. Kramer to the

Case No.: 16-cr-00322-EJD-1
ORDER DENYING MOTIONS FOR A NEW TRIAL

4

FBI, who initiated an investigation and a sting operation. *Id.* at 19-20 (Tr. of 2/8/19 at 90-91).

Defendant Kramer then testified at length about R.C. and the 2015 attempted arrest. Dkt. No. 364-9 (Tr. of 3/13/19 at 94-97). He stated, among other things, that he believed R.C. "had betrayed [he] and JP" and that R.C. "tried to get Jean Paul and Bernadette Npindu arrested." *Id.* at 3 (Tr. of 3/13/19 at 96). He further explained that he believed this "[b]ecause [he] witnessed the action in Kinshasa firsthand on live telephone." *Id.* Thus, between defense counsel's argumentation and Defendant's own testimony, Defendant was able to fully present his theory of R.C.'s betrayal to the jury.

It is also worth noting that defense counsel had subpoenaed R.C. as a witness for trial, but ultimately opted not to call her. Dkt. No. 298 (Tr. of 3/13/19 at 222-223). Hence, the defense had the opportunity to explore the issue of R.C.'s betrayal even further with R.C. directly; it simply elected not to do so. Moreover, as R.C. did not testify, this is not a case in which a witness's post-trial statement contradicted her testimony at trial. *Compare United States v. Slatten*, 865 F.3d 767, 791 (D.C. Cir. 2017) (considering the post-trial statements "to be an admission of perjury and a recantation of Monem's trial testimony" but still denying motion for new trial).

In response, Defendant argues that although he had knowledge of R.C.'s role in the 2015 incident at the time of trial, he did not have R.C.'s victim impact statement, which would have corroborated his testimony. Reply at 17-18. But the Ninth Circuit has held that evidence is not "newly discovered" if "the substance" of the evidence was already known to the defendant or introduced in another form. *Hinkson*, 585 F.3d at 1264; *see also United States v. McKinney*, 952 F.2d 333, 336 (9th Cir. 1991) (juror's letters and investigator's declaration were not "newly discovered evidence" of juror misconduct because "McKinney had been apprised of the information about the juror since September 21, 1989," during his trial). In *Hinkson*, the court held that two affidavits, "while newly written, did not provide any new *information* that was not already considered and rejected from evidentiary admission by the court: the affidavits merely supported the previously proffered evidence." *Id.* The same is true here: Although R.C. did not

Case No.: 16-cr-00322-EJD-1
ORDER DENYING MOTIONS FOR A NEW TRIAL
5

1  prepare her victim impact statement until after the trial, Defendant knew the information contained
2  in it—namely, the fact that she had participated in the 2015 attempted arrests.

3  In sum, R.C.'s victim impact statement contains no new information that Defendant did
4  not already possess and present to the jury at trial. It was the defense's own strategic decision not
5  to question R.C. directly about the 2015 incident, not a lack of opportunity. What is more,
6  Defendant has not shown that R.C.'s victim impact statement would be admissible without calling
7  R.C. as a witness. Defendant's motion for a new trial must therefore be denied for failure to point
8  to any "newly discovered" evidence. *See McKinney*, 952 F.2d at 336 (denying motion for a new
9  trial as untimely because the evidence was known before the verdict was received).

10  Defendant's motion must also be denied because the evidence at issue is insufficient to
11  indicate that the Defendant "would probably be acquitted in a new trial." For a start, the evidence
12  is cumulative. As just described, the jury heard Defendant's testimony that R.C. had been part of
13  The Undertaking's leadership and that she had attempted to have Mukuena and Npindu arrested.
14  Any additional evidence to that effect would simply be cumulative of Defendant's testimony. *See,*
15  *e.g.*, *United States v. Kerr*, 709 Fed. App'x 431, 433 (9th Cir. 2017).

16  Moreover, the evidence is "merely impeaching." *Hinkson*, 585 F.3d at 1264. "Ordinarily,
17  evidence impeaching a witness will not be material . . . because it will not refute an essential
18  element of the government's case." *United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992).
19  Here, R.C. was not even a witness; thus, any evidence impeaching her credibility is of dubious
20  relevance. In response, Defendant contends that R.C. was "the origin of the case against him,"
21  and that her prior betrayal therefore casts doubt upon "the entirety of the Government's" case.
22  Mot. at 10. But even if R.C. did indeed instigate the Government's investigation, any
23  questionable motives she may have had in doing so does not negate the overwhelming direct
24  evidence of Defendant's fraud. Although Defendant asserts that "the Government . . . built its
25  entire case on the false allegations formulated by [R.C.]," Mot. No. 1 at 5, the Government
26  presented ample evidence from other sources at trial. In particular, seven other victims testified,
27  all of whom stated that they wire-transferred money to Africa at Kramer's direction and in reliance

upon Kramer's false representations.  Under these circumstances, the Court finds that Defendant's allegedly new evidence would not probably result in his acquittal at a new trial.

The motion for a new trial based on newly discovered evidence is DENIED.

### B.  Instructional Error

Defendant's second motion for a new trial is based on instructional error.

It is undisputed that pursuant to the Ninth Circuit's March 20, 2020 decision in *United States v. Miller*, this Court improperly instructed the jury on the intent to defraud element of wire fraud and commodities fraud.  953 F.3d 1095 (9th Cir. 2020).  In *Miller*, the Ninth Circuit held the relevant intent required is the intent to "deceive *and* cheat" rather than the intent to "deceive *or* cheat."  *Id.* at 1102-03.[2]  That is, "a defendant must act with the intent not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions."  *Id.* at 1101.  This Court gave the Ninth Circuit Model Jury Instructions, which incorrectly defined intent to defraud as "the intent to deceive *or* cheat."  *See* Dkt. No. 286 at 18-20 (Jury Instruction Nos. 16 and 17).  The "deceive or cheat" language was in the Ninth Circuit Model because it had previously been deemed correct by the Ninth Circuit on several occasions, as recently as 2013.  *See United States v. Livingston*, 725 F.3d 1141, 1148 (9th Cir. 2013); *see also United States v. Treadwell*, 593 F.3d 990, 998–99 (9th Cir. 2010) (citing the model instructions of the Third, Fifth, Sixth, Tenth, and Eleventh Circuits as support for the "deceive or cheat" formulation).

The *Miller* court overruled these prior precedents in light of the Supreme Court's ruling in *Shaw v. United States*, 137 S. Ct. 462 (2016).  *See* 953 F.3d at 1102-03.  *Shaw* concerned the bank fraud statute and "cast serious doubt" on an instruction defining "scheme to defraud" as "any deliberate plan of action or course of conduct by which someone intends to deceive, cheat, *or* deprive a financial institution of something of value."  *Id.* at 1102 (quoting *Shaw*, 137 S. Ct. at 469) (emphasis in original).  The Court stated that "the scheme must be one to deceive the bank

---

[2] Although *Miller* specifically concerned wire fraud, the parties apparently agree that *Miller*'s holding applies equally to commodities fraud.  The Court therefore assumes that is the case.

Case No.: 16-cr-00322-EJD-1
ORDER DENYING MOTIONS FOR A NEW TRIAL
7

*and* deprive it of something of value." *Id.* (quoting *Shaw*, 137 S. Ct. at 469) (emphasis in original). The Ninth Circuit determined that, although the erroneous instruction in *Shaw* concerned bank fraud and the "scheme to defraud" element, it was appropriate to conform the "intent to defraud" element of wire fraud to *Shaw*. *Miller* thus establishes that the jury instructions given by this Court were erroneous.

The parties agree on all of the foregoing. Their disputes concern (1) whether Defendant failed to properly preserve his objection, triggering plain error analysis, and (2) whether the error was harmless. The Court examines both issues and holds that the error is harmless, wherefore the Court denies the motion for a new trial.

### i. Legal Standard

A motion for a new trial under Rule 33 may be granted for failure to give proper jury instructions. The applicable standard depends on whether the defendant timely objected to the relevant jury instruction. *See* Fed. R. Crim. P. 52(b); *United States v. Wilkes*, 662 F.3d 524, 544 (9th Cir. 2011). "Where a defendant fails properly to object to a jury instruction or to an omission from a jury instruction, we review for plain error." *United States v. Fuchs*, 218 F.3d 957, 961 (9th Cir. 2000). "A trial court commits plain error when (1) there is error, (2) that is plain[,] i.e., clear and obvious, and (3) the error affects substantial rights[,] i.e., affects the outcome of the proceedings." *United States v. Shields*, 844 F.3d 819, 823 (9th Cir. 2016) (internal quotation marks and alterations omitted). "We may exercise our discretion to notice such error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Fuchs*, 218 F.3d at 962.

This rigorous standard does not apply if the defendant made an objection that the trial court overruled. However, the defendant still must show that the error affects substantial rights. *See* Fed. R. Crim. P. 52(a); *Miller*, 953 F.3d at 1103. That is, "an error in misdescribing or omitting an element of the offense in a jury instruction is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *United States v. Thongsy*, 577 F.3d 1036, 1043 (9th Cir. 2009) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)).

Case No.: 16-cr-00322-EJD-1
ORDER DENYING MOTIONS FOR A NEW TRIAL
8

"Still, the burden on the defendant is heavy." *United States v. Espino*, 892 F.3d 1048, 1053 (9th Cir. 2018).

In this case, there is some dispute as to whether Defendant Kramer preserved an objection to the intent to defraud definition given by the Court at trial. At the hearing, the defense conceded that it did not request that intent to defraud be defined as "an intent to deceive *and* cheat"; its requested instructions contained the same "intent to deceive *or* cheat" language used by the Court. *See also* Dkt. No. 270 at 10; Dkt. No. 285 at 7. As the defense pointed out, however, it did ask the Court to add the following sentence to further explicate intent to defraud: "If you find only that Mr. Kramer intended to deprive an investor of the chance to make an informed business decision, but did not intend to cause financial harm to him or her." Dkt. No. 270 (citing *United States v. Lewis*, 67 F.3d 225, 233 (9th Cir. 1995)). Defendant argues that this request amounts to a requirement that the defendant have the intent to deprive his victim of money or property, i.e., the intent to cheat.

The Government contends this is not enough, and that because Defendant failed to request the correct definition of intent to defraud, plain error analysis is appropriate. If plain error analysis applies, the Court's error must be "clear and obvious" to justify a new trial; arguably, it was not, as *Miller* was decided well after trial. The Ninth Circuit in *United States v. Shields* held that the error was not "clear and obvious" where "[t]he district court's instructions were based on the Ninth Circuit Model Jury Instructions for wire fraud" and "there was then no controlling case law stating that there was a duty to disclose in order to convict for wire fraud where a material omission was involved." 844 F.3d 819, 823 (9th Cir. 2016). On the other hand, an unpublished memorandum disposition from February 2018 had deemed an instruction defining "intent to defraud" as "the intent to deceive or cheat" to be "erroneous in light of *Shaw*." *United States v. George*, 713 Fed. App'x 704, 705 (9th Cir. 2018). The Court is unaware of any case law by the Circuit regarding whether its unpublished decisions—"which are not controlling precedent," *United States v. Werle*, 815 F.3d 614, 620 (9th Cir. 2016)—suffice to make an error "clear and obvious" for purposes of the plain error standard.

Case No.: 16-cr-00322-EJD-1
ORDER DENYING MOTIONS FOR A NEW TRIAL
9

These questions—whether Defendant properly preserved his objection and whether the error was "clear and obvious" at the time of trial—are thorny indeed. Fortunately, the Court need not resolve them in this order. The Court will assume without deciding that ordinary harmless error review applies and, for the reasons below, find beyond a reasonable doubt that the jury would have convicted Kramer even if it had been properly instructed.

### ii. Harmless Error

As noted above, an erroneous jury instruction is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Thongsy*, 577 F.3d at 1043. The Ninth Circuit has made clear that when applying this standard, a court should consider "the jury instructions and the trial record as a whole." *Espino*, 892 F.3d at 1053. Where the evidence actually presented at trial and "other language in the jury instructions" assures the court that the jury could not have based its verdict on the erroneous language in the instruction, the Ninth Circuit has found the error to be harmless. *Miller*, 953 F.3d at 1103; *see also Espino*, 892 F.3d at 1053; *United States v. Perez*, 116 F.3d 840, 847 (9th Cir. 1997) ("Even though an element of the offense is not specifically mentioned [in the jury instructions], it remains possible the jury made the necessary finding."). At the same time, the Court is mindful that, in ruling on a motion for a new trial—unlike a motion for judgment of acquittal—a district court "need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000) (internal quotation marks and citation omitted).

In this case, the Court is persuaded that although it incorrectly instructed the jury that an intent to defraud is "an intent to deceive or cheat," the error was harmless. *Miller* itself is instructive in this regard. There, the defendant raised a defense that he, "while intending to deceive, did not intend to cheat." 953 F.3d at 1103. Specifically, Miller argued that "he believed the funds to be bona fide loans that he was fully authorized to issue to himself, albeit by means of the deceptive ledger entries." *Id.* The Ninth Circuit was nevertheless "persuaded, based on other language in the jury instructions, that there is no way the jury made this determination." *Id.* Most

Case No.: 16-cr-00322-EJD-1
ORDER DENYING MOTIONS FOR A NEW TRIAL
10

importantly, the court explained, "the district court's instruction on the 'scheme to defraud' element of the wire fraud counts told the jury that it must find that Miller 'knowingly engaged in a scheme or plan to defraud or obtain money or property by means of false or fraudulent pretenses, representations, or promises.'" *Id.*

This case is closely analogous to *Miller*. Kramer, like Miller, argues that the jury could have convicted him of making false statements without finding that he had "the specific intent to cheat victims of money or property." Mot. No. 2 at 11. At trial, Kramer's primary defense was that "he believed in the representations that he made concerning the gold and diamonds and the payments that were required to export the gold diamonds." Mot. No. 2 at 6. For instance, "when he promised enormous returns and bonuses to investors," Kramer allegedly "believed he could pay those returns." *Id.* Likewise, regarding the documents Kramer conveyed to investors that the Government claimed to be forgeries, Kramer contends he "believed in those documents"; according to Defendant, the "fact that the documents may not have been authentic does not have any tendency in reason to prove that Mr. Kramer did not believe in them." *Id.* at 8.

As in *Miller*, the Court is satisfied that, under the instructions as a whole, the jury's verdict could not have been based on finding the intent to deceive without the intent to deprive a victim of money or property by means of that deception. First, the Court's "scheme to defraud" instruction made clear that the object of the scheme must be the acquisition of money or property. Specifically, under the instruction given, the jury necessarily found that the scheme was "a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts." Dkt. No. 386 at 18, 20. In other words, the jury found beyond a reasonable doubt that The Undertaking was designed to cheat persons of money or property. In so doing, the jury rejected Kramer's contention that The Undertaking was a legitimate business venture. Kramer does not attack the sufficiency of the evidence to support this finding, and the Court agrees that ample evidence exists. It is undisputed, moreover, that the victims were in fact induced to part with money, though Kramer still maintains that he will make The Undertaking successful and repay them.

Case No.: 16-cr-00322-EJD-1
ORDER DENYING MOTIONS FOR A NEW TRIAL
11

Second, the jury was instructed to find that the false statements "made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property." *Id.* This materiality requirement further ensured that the false statements had to target a person's money or property. Kramer's argument that the jury could have convicted him based on certain tangential "white lies" therefore lacks merit. *See* Mot. No. 2 at 7-8 (citing evidence that Kramer "was deceptive in his application to become a foster parent in Norway," had discrepancies in his resume, and told an investor he was in the DRC when he was not). Under the jury instructions, the jury was required to rely only upon *material* statements. And indeed, there were such statements many presented at trial from which the jury could have chosen. The evidence of falsehoods and misrepresentation included, *inter alia*, promises of enormous returns and bonuses, none of which materialized; forged documents purporting to certify the gold; and promises to multiple different investors that he or she would get priority payment over all other investors.

Third, the jury found that Kramer "*knowingly* participated in, devised, or intended to devise" The Undertaking. Dkt. No. 386 at 18, 20. In so doing, jury apparently rejected Kramer's defense that he believed in good faith that The Undertaking would pay out investors. Importantly, moreover, Defendant did not claim to be a mere participant in the scheme; by all accounts, he devised the Undertaking and furthered it with the help of his co-conspirators.

In sum, then, the jury's guilty verdicts represent a finding that Kramer knowingly devised and created The Undertaking—a scheme designed to cheat persons of money or property. This finding renders it implausible that, on the evidence presented at trial, the jury may have convicted Kramer of having the intent to deceive without having the intent to cheat or steal. The Court therefore concludes that the jury would have returned the same verdict, if properly instructed.

One final matter remains. In his supplemental briefing, Defendant argues that the error could not be harmless because "it led to the denial of two special jury instructions requested by the defense" at trial: instructions on the defenses of "good faith" and "mistake of fact." Def. Supp. at 1; *see* Dkt. No. 285 at 9-10. But "good faith" and "mistake of fact" are simply "obverse[s] of

intent to defraud." *United States v. Cusino*, 694 F.2d 185, 188 (9th Cir. 1982). That is why the rule in this Circuit is that "the failure to give an instruction on a 'good faith defense' is not fatal so long as the court clearly instructed the jury as to the necessity of 'specific intent' as an element of the crime." *United States v. Gianandrea*, 38 Fed. App'x 434, 436 (9th Cir. 2002). Although the Court erred in defining the requisite specific intent, it did not fail to instruct the jury that intent to defraud was an element of the crime that the Government bore the burden of proving. Meanwhile, as the Court as just explained, other jury instructions rendered the Court's error harmless.

Moreover, the Court noted that its ruling rejecting the requested instructions did not preclude Kramer from arguing to the jury that he acted in good faith or otherwise lacked specific intent. Dkt. No. 399 at 64-65 (Tr. of 3/15/2019 at 64-65). And indeed, Kramer testified extensively as to his purported good faith belief that The Undertaking was a legitimate business venture, and Kramer's counsel argued good faith to the jury in his closing. *See, e.g.*, *id.* at 134 (Tr. of 3/15/2019 at 134). Under these circumstances, Defendant has not shown that he was prejudiced by the lack of an instruction on "good faith" or "mistake of fact."

Thus, having found that the error in the jury instructions was harmless, the Court DENIES the motion for a new trial based on instructional error.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES both of Defendant's motions for a new trial. Accordingly, the Court hereby vacates the September 14, 2020 status hearing and sets Defendant's sentencing for **October 26, 2020 at 9 a.m.** The parties may request an intervening status hearing if they so desire. In addition, the parties shall inform the Court by **October 12, 2020** whether they would like to conduct the sentencing in person or over Zoom.

**IT IS SO ORDERED.**

Dated: September 9, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 16-cr-00322-EJD-1
ORDER DENYING MOTIONS FOR A NEW TRIAL
13