1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| USA,<br><br>             Plaintiff,<br><br>        v.<br><br>KRAMER,<br><br>             Defendant. | Case No.   5:16-cr-00322-EJD-1<br><br>**ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR COMPASSIONATE RELEASE**<br><br>Re: ECF. No. 542 |

Before the Court is Defendant Kramer's Renewed Motion for Compassionate Release seeking modification of his sentence to credit for time served under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 542. Having reviewed the record and considered the parties' briefs, the Court GRANTS Defendant's request for the reasons discussed below.

## I.    BACKGROUND

Defendant was convicted of eleven counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of commodities fraud, in violation of 18 U.S.C. § 1348. *See* ECF Nos. 290, 446. On October 26, 2020, he was sentenced to 108 months imprisonment as to each count 1 through 12 to be served concurrently, followed by five years of supervised release, 3 years supervised release as to counts 1–11, and 5 years as to count 12 to be served concurrently. ECF Nos. 445; 542 at 1. Defendant is housed at the minimum-security satellite camp at the United States Penitentiary in Lompoc, California ("USP Lompoc"), one of the four facilities within the Lompoc Federal Correctional Complex ("FCC"). ECF Nos. 542 at 2; 546 at 1, 17. His projected release date is October 24, 2023. ECF Nos. 558, 559.

On April 14, 2021, Defendant, through his attorney, filed a motion for compassionate

United States District Court
Northern District of California

release under 18 U.S.C. § 3582(c)(1)(A)(i) while incarcerated in Santa Rita Jail (before his transfer to the Bureau of Prisons ("BOP")) to reduce his 108-month sentence to time served and/or home detention for the remainder of his sentence.  ECF No. 490.  Defendant's motion was based on his advanced age of 72 years old, that he had contracted COVID-19 and continued to suffer from lingering respiratory problems, his diagnosis in January 2021 of high-risk metastatic prostate cancer, and additional health issues, including hypertension and hyperlipidemia.  *Id.* at 3.  Prior to his prostate cancer diagnosis, Defendant underwent emergency open-heart surgery after contracting a staph infection while in custody in 2016.  ECF No. 542 at 1.  Defendant later underwent surgery to remove his prostate on April 13, 2021.  ECF Nos. 499 at 8; 501-3.  Defendant tested positive for COVID-19 months before his prostate surgery, and he has since received two doses of the Moderna vaccine and his booster.  ECF Nos. 542 at 2; 546 at 7–8, 13.  The Court denied without prejudice Defendant's motion for deficiencies in his proposed released plan and for failing to meet his burden of showing that his medical conditions, including his prostate cancer and residual effects of COVID-19, qualify as an "extraordinary and compelling" reason in support of his release.  ECF No. 525.

On December 13, 2021, Defendant filed a renewed request for compassionate release pursuant to 18 U.S.C. § 3582(c), requesting modification of his sentence to credit for time served with a condition of supervised release that Defendant reside in a Residential Reentry Center ("RRC") until he finds a more stable residence.  *See* ECF No. 542.  The government opposes Defendant's request.  *See* ECF. No. 546.

## II.     LEGAL STANDARD

Section 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), provides that a court may modify a previously imposed sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  Under this provision the court may reduce a term of

United States District Court
Northern District of California

1  imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction."  18

2  U.S.C. § 3582(c)(1)(A)(i).  In determining whether "extraordinary and compelling reasons" exist

3  for reducing the defendant's sentence, the Court must "consider[] the factors set forth in section

4  3553(a) to the extent that they are applicable."  18 § 3582(c)(1)(A).  The Court must also ensure

5  that "such a reduction is consistent with applicable policy statements issued by the Sentencing

6  Commission."  *Id.*

7  **III.    DISCUSSION**

8      **A.    Administrative Exhaustion**

9         As a threshold matter, the government does not contest that Defendant has exhausted his

10  administrative remedies pursuant to Section 3582(c)(1)(A).  ECF No. 546 at 9.  On October 22,

11  2021, Defendant submitted a request for compassionate release to the warden of Lompoc.  *Id.*;

12  ECF No. 542-3, Ex. B.  His request was denied the following month.[1]  ECF No. 542 at 3.

13      **B.    Extraordinary and Compelling Reasons**

14         In Defendant's renewed request he asks the Court to grant compassionate release and

15  modify his sentence under 18 U.S.C. § 3582(c) based on three circumstances, including: (1) his

16  age and underlying health conditions, which Defendant asserts increases his susceptibility to death

17  or serious illness if he were to contract COVID-19; (2) the fact the Bureau of Prisons ("BOP")

18  would grant Defendant's release to home confinement "but for his lack of a residence;" and (3) the

19  "harsh conditions of confinement" under which Defendant has served his sentence.  ECF No. 542.

20  For the reasons discussed below, the Court concludes that Defendant has demonstrated

21  extraordinary and compelling circumstances warranting compassionate relief under 18 U.S.C. §

22  (c)(1)(A)(i).

23

24

25  _____

26  [1] There are some discrepancies in the warden's denial.  Defendant states that "the warden denied
   the request [for compassionate release]" sometime the following month, but the denial letter
   received by defense counsel is dated October 8, 2021 and addressed to a different individual

27  (although it was postmarked November 16, 2021).  ECF Nos. 542 at 3 n.1; 542-4, Ex. C.
   Regardless, more than 30 days have lapsed since Defendant submitted his request.

28  Case No.: 5:16-cr-00322-EJD-1
   ORDER GRANTING DEF.'S RENEWED MOT. FOR COMPASSIONATE RELEASE

### 1.   Defendant's Medical Conditions

Section 3582(c)(1)(A)(i) does not specifically define what constitutes "extraordinary and compelling circumstances" but the "Application Notes" of § 1B1.13 of the United States Sentencing Guideline ("U.S.S.G.") set forth the following categories: "(1) medical conditions which diminish the ability of the defendant to provide self-care in prison, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories." *United States v. Davis*, No. 98-CR-40082-YGR, 2021 WL 5816283, at *1 (N.D. Cal. Nov. 9, 2021) (citing U.S.S.G. § 1B1.13, Application Note 1(A)).  Although the Sentencing Commission's policy statement set forth in § 1B1.13 is binding on motions for compassionate release brought by the BOP and not those which are defendant-filed, it may nevertheless "inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *see also United States v. Juarez*, No. 17-CR-00554-PJH-1, 2022 WL 4544698, at *2 (N.D. Cal. Sept. 28, 2022).

Defendant asserts that his advanced age of 74 years old combined with his medical conditions places him at serious risk of death or severe illness from COVID-19 and constitute "extraordinary and compelling reasons" for compassionate release.[2]  Section 1B1.13 specifically provides two circumstances relating to a defendant's medical condition.  First, "extraordinary and compelling reasons" exist where "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," including, for example, "metastatic solid-tumor cancer."  U.S.S.G. § 1B1.13 cmt. n.1(A)(i).  Second, this standard is also satisfied where a defendant is "suffering from a serious physical or medical condition, . . . serious functional or cognitive impairment, or . . . deteriorating physical or mental health because of the aging process . . . [any of which] substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected

---

[2] At the time of filing his renewed motion in December 2021, Defendant was 73 years old.  ECF No. 542 at 1.  The Court calculates that Defendant is 74 years old at the time of issuing this decision.  *See* ECF No. 447 at 3.

United States District Court
Northern District of California

1  to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).  As discussed, while the circumstances outlined in

2  the policy statement are no longer binding, the court does find the policy statement persuasive.

3      Defendant was diagnosed with prostate cancer and underwent a radical prostatectomy and

4  pelvic lymph node removal at the Highland Hospital in Oakland in April of 2021.  ECF Nos. 499

5  at 9; 542 at 1; 546 at 6–7.  Defendant notes that, in 2016 prior to his prostate cancer diagnosis, he

6  was diagnosed with a staph infection while in police custody, which required emergency open-

7  heart surgery and a lengthy hospital stay.  ECF No. 542 at 1.  In his renewed motion, Defendant

8  argues that his prostate cancer diagnosis, which requires follow up care and treatment, as well as

9  his hypertension and his deteriorating health due to his advanced age, places him at heightened

10  risk of death or severe illness from COVID-19 and constitutes an "extraordinary and compelling

11  reason[]" to grant his renewed request.  Defendant submits that his deteriorating health has

12  "substantially diminish[ed] [his] ability to … provide self care."  ECF No. 542 at 9.  The

13  government responds that Defendant's prostate cancer diagnosis and his hypertension are being

14  managed by medical professionals at and outside Lompoc.  ECF No. 546 at 13.

15      Notwithstanding the fact that Defendant has previously recovered from COVID-19, the

16  Court finds that with the passage of time and increased aging, as well as the new variants of

17  COVID-19 becoming widespread, Defendant's hypertension and prostate cancer diagnosis

18  increases his susceptibility of death or severe illness if he were to contract COVID-19 again,

19  combined with the aforementioned vulnerability and natural physical deterioration, favors granting

20  compassionate release at this time.  *See e.g.*, *United States v. Parish*, No. 07-CR-00578-RMG,

21  2021 WL 1152960, at *1-3 (D. S.C. Mar. 17, 2021) (granting compassionate release to a 63-year

22  old partially vaccinated inmate who previously contracted and recovered from COVID-19, noting

23  that "[t]he combined effect of [inmate's] significant array of cardiac, kidney, vascular, and other

24  chronic conditions, exacerbated by his advancing age, makes it highly probable he faces a

25  progressing declining health status in an institutional setting and would not survive until his

26  anticipated release date at age 71."); *United States v. Valencia-Lopez*, No. 05-CR-00841-NGG,

27  2022 WL 198604, at *2 (E.D.N.Y. Jan. 21, 2022) (finding that the current circumstances of the

28  Case No.: 5:16-cr-00322-EJD-1
ORDER GRANTING DEF.'S RENEWED MOT. FOR COMPASSIONATE RELEASE

1   pandemic in combination with defendant's cancer diagnosis, which was in remission since

2   sentencing, as well as defendant's convictions, criminal history, and the substantial percentage of

3   his time served, weighed in favor of granting compassionate release notwithstanding his full

4   vaccination status).

5          Accordingly, the Court finds that Defendant's medical circumstances combined with the

6   reasons discussed herein justify early release under § 3582(c)(1)(A)(i).

### 2. BOP's Willingness to Release Defendant to Home Confinement

8          Defendant further asserts that the BOP's "indicated willingness" to release Defendant to

9   home confinement "but for his lack of residence" supports granting compassionate release. ECF

10  No. 542 at 9. The government contends that a BOP designation decision does not constitute an

11  "extraordinary and compelling" reason for an inmate's compassionate release under § 1B1.13,

12  cmt. n.1. Courts, however, have the discretion to consider reasons outside those listed in

13  Application Note 1(A) through (C) of § 1B1.13. *Aruda*, 993 F.3d at 801 ("[D]istrict courts are

14  'empowered … to consider any extraordinary and compelling reason for release that a defendant

15  might raise.") (internal quotations omitted); *id.* (collecting cases).

16         Defendant refers to an email exchange with his case manager indicating that the Warden

17  deemed Defendant an appropriate candidate for home confinement under the CARES Act, but that

18  Defendant has not been approved because he lacks a residence. ECF Nos. 542 at 3; 542-2, Ex. A.

19  The Court previously expressed concern about Defendant's proposed release plan to a friend's

20  home in Michigan, noting (amongst other concerns) that his plan lacked information about his

21  ability to obtain necessary medical care in Michigan and his ability to attend future court hearings.

22  ECF No. 525 at 5. In his renewed motion, Defendant requests that the Court release him to a RRC

23  until he finds a stable residence from which he can continue his home confinement.[3] ECF No. 542

24  at 11–12. In response to the Court's concerns Defendant proposes that he will enroll in health

---

[3] Defendant contends and the government does not dispute that the CARES Act does not preclude release to an RRC as a "home" for purposes of "home confinement" under § 3624(c)(1). ECF No. 542 at 11.

United States District Court
Northern District of California

1    insurance through Medi-CAL and receive financial assistance from his daughter in addition to

2    receiving supplemental security income.

3         The government also opposes Defendant's release plan because it fails to identify how he

4    would be better equipped to provide self-care for his medical conditions at a RRC, or how it

5    would provide much safer conditions than his current housing at the camp.  ECF No. 546 at 18–

6    21.  For example, RRCs do not have in-house medical staff or services, and Defendant does not

7    have a car which necessitates the use of public transportation to attend medical appointments and

8    procedures and to appear before the Court.  *Id.* at 20.  The government also contends that

9    Defendant's release from one communal living situation, the satellite camp at USP Lompoc, to

10   another communal living situation, a RRC, will not offer much greater protection from COVID-

11   19.  *Id.* at 21.

12        Defendant argues that he will encounter many of, if not all, these issues upon his

13   supervised release to a RRC, and that the fact that he does not have a residence should not be

14   preclusive.  ECF No. 550 at 9–10.  Defendant also notes that the risk of reinfection and illness

15   from COVID-19 at a RRC is lower than that of a prison because there are fewer individuals

16   housed at RRCs, and Defendant will also have greater control over his hygiene, the cleanliness of

17   his living quarters, and *when* and *how* he social distances.  *Id.* at 10.  RRC facilities may also

18   screen individuals for health issues prior to acceptance as a means of maintaining a safe

19   environment for all residents.

20        The Court agrees that Defendant must prepare for reentry irrespective of whether he is

21   released now or on October 24, 2023, and Defendant's requested release to a communal living

22   situation is not detrimental to his application for compassionate release.  In review of the record, it

23   appears that Defendant would likely be released to a RRC, and Probation would then be tasked

24   with assisting him in finding a more permanent residence.  Being released to the RRC now affords

25   Probation the opportunity to provide that service sooner such that Probation could find him

26   appropriate housing in a timely manner.  The Court therefore finds an RRC to be an appropriate

27   release location at this time.  The Court is satisfied that Defendant has provided sufficient detail as

28   Case No.: 5:16-cr-00322-EJD-1

United States District Court
Northern District of California

1  to his proposed release plan.

2       This circumstance therefore weighs in favor of granting compassionate release.

3                    **3.       Harsh Conditions of Confinement**

4       Finally, Defendant asserts that harsher conditions of confinement during the COVID-19

5  pandemic is an additional "extraordinary and compelling circumstance" supporting compassionate

6  release.  ECF 542 at 12.  Courts have considered harsh conditions of confinement as a valid factor

7  supporting a shorter custodial sentence. *See, e.g., United States v. Spano*, 476 F.3d 476, 479 (7th

8  Cir. 2007).

9       Defendant contends that the harsh conditions of confinement during the ongoing COVID-

10 19 pandemic, which resulted in lockdowns and reduced work and programming opportunities,

11 warrant a sentence reduction because confinement during COVID-19 has been more punitive than

12 anticipated at sentencing.  ECF. No. 542 at 12–14.  The cases Defendant cites in support involve

13 circumstances where the COVID-19 pandemic constituted one of multiple circumstances that,

14 taken collectively, created harsh conditions of confinement that were "extraordinary and

15 compelling reasons."  *Id.* at 14; *see e.g.*, *United States v. McGee*, No. 12-CR-00052-EMC-1, 2021

16 WL 1660251, at *2 (N.D. Cal. Apr. 26, 2021) (finding that the COVID-19 pandemic created a

17 "severe condition" of confinement not anticipated at sentencing but "acknowledg[ing] that each of

18 the above circumstances taken individually would not be sufficient in terms of justifying a

19 reduction in sentence."); *United States v. Quinones*, No. 00-CR-00761-JSR-1, 2021 WL 797835,

20 at *2 (S.D.N.Y. Feb. 27, 2021) (granting defendant's request on the basis that his underlying

21 health conditions put him at a high risk of severe illness from COVID-19, and finding that

22 lockdowns and restrictions have rendered his sentence harsher and more punitive than

23 anticipated).

24      The government notes that this Court sentenced Defendant during the pandemic, and that

25 the Court was aware of these conditions and considered the modified conditions of incarceration in

26 announcing its sentence.  ECF No.546 at 21–22.  Nonetheless, the Court will assume in

27 Defendant's favor that the Court did not anticipate the severity nor the length of the pandemic.

28 Case No.: 5:16-cr-00322-EJD-1
ORDER GRANTING DEF.'S RENEWED MOT. FOR COMPASSIONATE RELEASE

United States District Court
Northern District of California

1    The Court therefore concludes that the harsh conditions of confinement tend to weigh in

2    Defendant's favor.

3          Defendant also argues that the COVID-19 pandemic took away opportunities to reduce his

4    sentence beyond good time credits, referring to earned time credits under the First Step Act.  ECF

5    No. 542 at 13–14.  However, the Court finds that this argument moot in light of the status reports

6    later filed by Defendant and the government, which indicate that the BOP has since calculated new

7    release dates for inmates with earned credits.  ECF Nos. 558, 559.  After application of earned

8    time credits, Defendant's projected release date is October 24, 2023.[4]

9          In sum, the nature of Defendant's incarceration during the pandemic, his advanced age,

10   medical conditions, and declining physical health, which increases his risk of death or serious

11   illness from COVID-19, collectively weigh in favor of finding "extraordinary and compelling"

12   circumstances justifying compassionate release at this time.

13         **C.      Section 3553(A) Factors**

14         A court must impose a sentence that is "sufficient, but not greater than necessary" to

15   accomplish the goals of sentencing.  18 U.S.C. § 3553(a).  In determining whether "extraordinary

16   and compelling reasons warrant a reduction in sentence," courts also "consider the factors set forth

17   in Section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  The seven

18   factors are: "(1) the nature and circumstances of the offense and the history and characteristics of

19   the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the

20   kinds of sentences and the sentencing range established by the Sentencing Guidelines; (5)

21   pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid

22   unwarranted sentencing disparities among defendants who have similar criminal records and have

23   been found guilty of similar conduct; and (7) the need to provide restitution to victims."  *United*

24   *States v. Hernandez*, 795 F.3d 1159, 1168 (9th Cir. 2015) (citing 18 U.S.C. § 3553(a)).

25         In consideration of the need to protect the public, Defendant was convicted of nonviolent

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [4] Defendant's release date before application of Earned Time Credits was March 7, 2024.

28   Case No.: 5:16-cr-00322-EJD-1
     ORDER GRANTING DEF.'S RENEWED MOT. FOR COMPASSIONATE RELEASE

United States District Court
Northern District of California

1   fraud offenses; he is in criminal history category I; he is housed at a minimum-security camp; he

2   has no history of alcohol or substance abuse; and he has no previous convictions.  18 U.S.C. §§

3   3553(a)(1)–(2); *see* ECF No. 447 at 2, 18; 542 at 11.  The government argues that the Section

4   3553(a) factors do not support Defendant's release because he poses an economic danger to his

5   community and expresses concern that he will return to fraudulent conduct.[5]  ECF No. 546 at 23–

6   24.  In light of Defendant's good behavior in both Santa Rita and the BOP, Defendant's health

7   issues, and the significant limitations on his freedoms that will be imposed during his supervised

8   release "during which he can be quickly returned to custody if he shows signs of likely

9   recidivism," *United States v. McPherson*, 454 F. Supp. 3d 1049, 1053 (W.D. Wash. 2020), the

10  Court is not persuaded that the risk that Defendant *could* return to criminal activity—as with any

11  inmate—cautions against granting the requested relief in this case.

12         Defendant further submits that he will likely have a low PATTERN recidivism risk score,

13  given the aforementioned factors combined with his advanced education.  ECF No. 542 at 11.  The

14  Court expects that the imposed conditions of supervised release will be monitored and enforced by

15  Probation once Defendant is released, and that Probation will bring any violations to the Court's

16  immediate attention.

17         The Court also finds that the seriousness of Defendant's offense and the need to deter

18  criminal conduct have been accomplished by the significant period of incarceration that Defendant

19  has already served since he was taken into custody over six and a half years ago, on July 7, 2016.

20  18 U.S.C. §§ 3553(a)(2)(A), (B).  Defendant has served almost three quarters of the 108-month

21  sentence imposed by the Court, and with earned time credits he is eligible for release in

22  approximately eight months.[6]  The Court finds that a sentence of approximately 78 months' time

23

24  _____

25  [5] The government also asserts that Defendant is flight risk because he has expressed a desire to
    one day return to Switzerland.  ECF No. 546 at 24.  However, Defendant has limited financial
26  means, and the Court has already ordered Mr. Kramer not to "leave the federal judicial district
    where you are authorized to reside without first getting permission from the court or the probation
27  officer."  *See* ECF No. 457.
    [6] Defendant calculates that he has served approximately 50% of his 108-month sentence at the
    time of filing.  ECF No. 542 at 11; *see also* ECF Nos. 558, 559.

28  Case No.: 5:16-cr-00322-EJD-1
    ORDER GRANTING DEF.'S RENEWED MOT. FOR COMPASSIONATE RELEASE
    10

United States District Court
Northern District of California

served of his imposed 108-month custodial sentence would also avoid "unwarranted sentencing disparities." 18 U.S.C. § 3553(a)(6).

Accordingly, the Court finds the applicable Section 3553(a) factors weigh in favor of reducing Defendant's sentence to time served.

## IV.   CONCLUSION

For the foregoing reasons, the undersigned GRANTS Defendant Kramer's renewed request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

1. Defendant's sentence is modified to credit for time served, with the special condition that Defendant shall be subject to home confinement at a Residential Reentry Center until Probation and Defendant can determine a more suitable permanent housing arrangement.

2. Defendant will serve the five-year term of supervised release imposed in the original sentence with all of the terms and conditions set forth in the judgment.

The BOP is directed to release Defendant Kramer to a Residential Reentry Center under the arrangement and supervision of Probation.  The government shall serve a copy of this order on the Warden at FCC Lompoc immediately.

**IT IS SO ORDERED.**

Dated: January 23, 2023

EDWARD J. DAVILA
United States District Judge